## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| CONSTANCE D. NANCE, | ) | CASE NO: 1:13-CV-1604 |
| | ) | |
| Plaintiff, | ) | JUDGE WELLS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | VECCHIARELLI |
| ZWICKER & ASSOCIATES, PC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | **REPORT AND RECOMMENDATION** |

This case is before the undersigned United States Magistrate Judge upon referral for the preparation of a Report and Recommendation on the motion for attorney's fees and costs, filed on behalf of Plaintiff Constance D. Nance ("Nance" or "Plaintiff").  (Doc. No. 30.)  For the reasons set forth below, the Magistrate Judge recommends that the motion be GRANTED in part and DENIED in part, specifically, that Plaintiff be awarded attorney's fees in the amount of $10,350.00 and costs in the amount of $400.00.

### I.  Factual and Procedural Background

This case arises out of Nance's claim that Defendants Zwicker & Associates, P.C., and attorneys Derek Scranton and Anne Smith (collectively, "Defendants"), violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"), and Ohio's Consumer Sales Practices Act, Ohio Rev. Code § 1345.01, *et seq.* ("OCSPA"), when Defendants sought attorney's fees in a state court law suit in connection with their collection efforts against Nance on behalf of Discover Bank.  Plaintiff was represented at all relevant times by attorneys Bruce R. Rose ("Rose"),

Theodore E. Meckler ("Meckler") and Walter C. Wurster ("Wurster") (collectively, "Plaintiff's Counsel").

## A.  Proceedings in *Wise v. Zwicker & Associates, PC*

In June 2012, Meckler and Rose filed a class action lawsuit against Defendants, in which a different individual, Dawson W. Wise, was the named plaintiff, in case number 5:12-CV-1653 ("*Wise*"), before Judge Sara Lioi.  (*See* Dkt. No. 12-CV-1653, Doc. No. 1.)  The complaint in *Wise* alleged that Defendants had violated the FDCPA and the OCSPA when they sought attorney's fees in a state court law suit in connection with their efforts to collect a debt from Wise on behalf of American Express Centurion Bank.  (*Id*.)  On March 8, 2013, Meckler and Rose filed a motion to amend the complaint in *Wise* to, *inter alias*, add Nance as a plaintiff.  (*See* Dkt. No. 12-CV-1653, Doc. No. 20.)

On March 26, 2013, after receiving the motion to amend, Defendants offered to settle Nance's claims for $1,500.00 "plus reasonable fees to date."  (Doc. No. 30-5.) On March 29, 2013, Meckler declined Defendants' offer.  (Doc. No. 30-6.)  On June 28, 2013, Judge Lioi denied the motion to amend to the extent it sought to add Nance as a plaintiff in that case.  (*See* Dkt. No. 12-CV-1653, Doc. No. 29.)  On July 14, 2013, Meckler sent a letter to Defendants, inquiring whether Defendants would be amenable to entering into a tolling agreement with respect to Nance's claims under the FDCPA and the OCSPA.  (Doc. No. 30-7.)  On July 16, 2013, Defendants declined to enter into a tolling agreement.  (Doc. No. 30-8.)

**B.  Proceedings in this Case**

On July 24, 2013, Plaintiff filed the complaint in this case, asserting the same two types of claims –  one under the FDCPA and one under the OSCPA – against Defendants that they had asserted in *Wise*.  (Doc. No. 1.)  On October 4, 2013, Meckler and Rose sent Defendants' attorney, Boyd. W. Gentry, a "formal demand" totaling $22,706.00, which consisted of: (1) $1,630.00 in "statutory and actual damages"; (2) "reimbursement" of $8,600.00, the amount Plaintiff apparently paid to settle Discover's state court law suit against her; (3) attorney's fees of $12,706.00; and (4) $400.00 in costs.  (Doc. No. 30-4.)  On November 18, 2013, Defendants offered to settle this case for $1,200.00, plus reasonable attorney's fees incurred in this case, but not any fees incurred in *Wise*.  (Doc. No. 30-10.)  On November 25, 2013, Meckler rejected Defendants' offer, reiterated the terms of the October 2013 demand, and indicated that the fees in the case had "now increased to $21,710.00" – an increase of $9,004.00 – resulting in a total demand of $32,340.00.  (Doc. No. 30-9.)  On that same date, Plaintiff served discovery requests on Defendants.  (Doc. Nos. 30-11, 30-12, 30-13.)

On December 6, 2013, Defendants made an Offer of Judgment, pursuant to Rule 68 of the Federal Rules of Civil Procedure, on the following relevant terms: (1) payment to Plaintiff in the amount of $2,000.00; and (2) costs and attorney's fees "incurred in this federal case," as agreed between counsel or determined by the Court. (Doc. No. 30-14.)  On December 11, 2013, Meckler rejected the Offer of Judgment, but indicated that Plaintiff would agree to settlement on the following terms: (1) payment to Plaintiff in the amount of $4,000.00; and (2) "actual costs and reasonable attorney's fees with respect to [Nance's] claims against Defendants under the [FDCPA] and the

-3-

[OCSPA]," as agreed between counsel or determined by the Court.  (Doc. No. 30-15.)

On December 26, 2013, Plaintiff filed a motion to compel production of Defendants' Rule 26(a) disclosures, requesting unredacted copies of the relevant insurance agreements required by the Rule.  (Doc. No. 12.)  On December 30, 2013, Defendants made a second Offer of Judgment pursuant to Rule 68, on the following relevant terms: (1) payment to Plaintiff in the amount of $4,000.00; and (2) "actual costs and reasonable attorney's fees incurred in this federal case."  (Doc. No. 30-16.)  A January 10, 2014 e-mail from Gentry to Meckler and Rose reflects that, during a previous conversation, Plaintiff's Counsel had requested that Defendants remove "any language that attorney fees and costs would be limited to this federal action."  (Doc. No. 30-17.)  Gentry indicated that Defendants "disagree with [the] proposition that you can seek fees in this case for work done in another case," and, thus, declined to remove the relevant language.  (*Id.*)  On January 23, 2014, Meckler sent Gentry a letter reiterating, *inter alias*, that Plaintiff's Counsel would not agree to any settlement conditioned upon the limitation of attorney's fees to those incurred in the present case.  (Doc. No. 30-19.)

Also on January 23, 2014, Defendants filed a brief in opposition to the motion to compel, arguing that their second Offer of Judgment fully satisfied Plaintiff's claims and, thus, any further discovery was moot.  (Doc. No. 14.)  On January 27, 2014, Defendants filed a motion for judgment on the pleadings, arguing that, based on a choice of law provision in Plaintiff's agreement with Discover, Delaware law – which permits the collection of attorney fees in connection with the collection of a consumer debt – applied, and, thus, Defendants were entitled to judgment on the pleadings. (Doc. No. 16.)  The next day, the undersigned United States magistrate judge

-4-

conducted a telephone conference regarding Plaintiff's motion to compel the production of Rule 26(a) disclosures, and granted the motion subject to redactions to which the parties had agreed during the conference.  (Doc. Nos. 17, 18.)

On February 3, 2014, Plaintiff filed a letter indicating that the parties had a dispute regarding Defendants' responses to Plaintiff's discovery requests.  (Doc. No. 19.)  Defendants filed a motion to dismiss the case for mootness, arguing that the case was moot because Defendants' most recent Rule 68 Offer of Judgment satisfied Plaintiff's claims.  (Doc. No. 21.)  On that same date, the undersigned conducted a telephone conference, wherein counsel indicated that there was a possibility of settlement.  (Doc. No. 22.)  The undersigned continued the telephone conference to the next day to allow counsel to confer and determine whether the case could be resolved. (*Id*.)  On February 4, 2014, Gentry indicated via e-mail that the parties had settled the matter.  (Doc. No. 23.)  On February 17, 2014, the parties filed a proposed stipulated dismissal, which reserved Plaintiff's right to seek reasonable attorney's fees and costs. (Doc. No. 25.)  On February 20, 2014, the Court issued an order dismissing the case with prejudice.  (Doc. No. 26.)

**C.  Motion for Fees**

On March 12, 2014, Plaintiff's Counsel filed a motion for attorney's fees and costs, requesting: (1) fees in the amount of $36,205.00, consisting of: (a) $28,837.50 for legal work performed by Meckler, (b) $5,250.00 for legal work performed by Rose, and (c) $2,117.50 for legal work performed by Wurster; and (2) $400.00 in costs.  (Doc. No. 30.)  In support of the motion, in addition to copies of the correspondence related to the relevant events in this case, Plaintiff's Counsel have submitted: (1) a time sheet

-5-

reflecting that Meckler expended 76.9 hours of legal work on the case, at an hourly rate of $375.00 (doc. no. 30-23); (2) a time sheet indicating that Rose expended 17.5 hours of legal work on the case, at an hourly rate of $300.00 (doc. no. 30-26); (3) time sheets indicating that Wurster expended 7.7 hours of legal work on the case, at an hourly rate of $275.00 (doc. no. 30-28); (4) a record of costs reflecting a $400.00 filing fee (doc. no. 30-24); and (5) affidavits from each of Plaintiff's Counsel (doc. nos. 30-22, 30-25, 30-27).

On March 29, 2014, Defendants filed their opposition to the motion for fees, arguing that the requested fees were excessive because: (1) Plaintiff's counsel expended hours on duplicative legal work; (2) Plaintiff is not entitled to fees for legal work expended in *Wise* or for time that was otherwise not reasonably expended in support of Plaintiff's claims; and (3) hours expended after Defendants made the December 2013 Offer of Judgment constitute economic waste.  (Doc. No. 33.)  On April 14, 2014, Plaintiff's Counsel filed a reply in support of their motion for fees.  (Doc. No. 37.)

On April 15, 2014, Plaintiff's Counsel filed a supplemental submission of attorney time records, in which they requested additional fees for the time expended on the motion for fees and their reply in support of the motion.  (Doc. No. 38.)  Plaintiff's Counsel requested an additional $5,850.00 for 15.6 hours of legal work performed by Meckler since the filing of the fee motion, and an additional $870.00 for 2.9 hours of legal work performed by Rose since the filing of the fee motion, resulting in a total request for attorney's fees of $42,925.00, representing 120.6 hours of attorney work, in

-6-

this case.

## II.  Applicable Law

Under 15 U.S.C. § 1692k, an individual who prevails in a suit against a debt collector under the FDCPA is entitled to "the costs of the action, together with a reasonable attorney's fee as determined by the court."  15 U.S.C. § 1692k(a)(3); *see* *Lee v. Thomas & Thomas*, 109 F.3d 302, 306-07 (6th Cir. 1997).  The OCSPA permits a discretionary award of attorney's fees to a prevailing party where "[t]he supplier has knowingly committed an act or practice that violates" the OCSPA.  Ohio Rev. Code § 1345.09(F)(2).

Once a court determines that a prevailing party is entitled to attorney's fees and costs, the primary concern is whether the fee is reasonable.  *Lee*, 109 F.3d at 307.  "'A reasonable fee . . . is one that is adequate to attract competent counsel, but [does] not produce windfalls to attorneys.'"  *Id.* (quoting *Hadix v. Johnson*, 65 F.3d 532, 535 (6th Cir. 1995)).  Generally, courts determine a reasonable fee in a particular case by multiplying "a reasonable hourly rate" by "the number of hours reasonably expended on the litigation."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  The result of this calculation is known as the "lodestar," and courts "indulge in a 'strong presumption' that the lodestar 'represents a reasonable fee.'"  *Dowling v. Litton Loan Servicing LP*, 320 F. App'x 442, 446 (6th Cir. 2009) (quoting *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S., 546, 565 (1986)).  "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates."  *Hensley*, 461 U.S. at 437.

Here, Defendants do not dispute that Plaintiff is entitled to attorney's fees and costs.  Nor do they dispute the hourly rates requested by Plaintiff's Counsel. Defendants, however, contend that the number of hours expended by Plaintiff's Counsel in pursuing Plaintiff's claims under the FDCPA and the OCSPA were excessive, and that, accordingly, this Court should reduce the number of compensable hours in this case.  The undersigned agrees.

This was not a complicated case.  Plaintiff's claims were straightforward: she alleged that Defendants violated federal and Ohio law when they sought to collect attorney's fees in connection with their efforts to collect a debt on behalf of Discover. The legal framework of these claims was well known to at least two of Plaintiff's Counsel, as they had been litigating identical claims on behalf of another client since June 2012, more than one year before they filed the complaint in this action.  Plaintiffs served a single set of discovery requests – consisting of nearly identical requests to each defendant – and engaged in two brief telephone conferences regarding discovery disputes.  Although Defendants filed two potentially dispositive motions in the case, Plaintiff was not required to respond to those motions because the parties settled within one week of the filing of the first dispositive motion and one day after the filing of the second.  Despite the simple nature of Plaintiff's claims and the relative paucity of litigation in the matter, Plaintiff's Counsel request nearly $43,000 in fees, representing over 120 hours of legal work by three different attorneys.  The discrepancy between the low level of complexity in this litigation and the number of hours expended by Plaintiff's Counsel is shocking and merits a substantial reduction of the attorney's fees awarded

-8-

in this matter.

## III.  Analysis

**A.      Duplicative and Redundant Work**

Defendants argue that the structure of Plaintiff's legal team resulted in various inefficiencies and excessive hours of legal work, including double and triple billing for conversations between the attorneys, billing for the time Wurster spent communicating with Nance regarding the work of the other attorneys on the case, and time spent by Rose reviewing Meckler's work.

Plaintiff's Counsel note that multiple courts have observed that there is nothing inherently unreasonable about a client having multiple attorneys.  (Reply Brief at 9.) The undersigned agrees.  However, as the Sixth Circuit has observed, "Plaintiffs are not entitled to have number of well-qualified attorneys reimbursed for their efforts, when fewer attorneys could have accomplished the job." *Ky. Res. Concepts, Inc. v. Louisville* 117 F. App'x 415, 419 (6th Cir. 2004).  A prevailing party is not entitled to recover for "hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434.

Plaintiff's Counsel contend that they structured their work in this case to benefit Plaintiff, and to avoid duplication of effort.  In his affidavit in support of the fee motion, Meckler states as follows:

> 51.    Three attorneys were involved in seeking to vindicate Nance's rights, myself, Bruce Rose and Walter Wurster.  The division of labor between the three attorneys was designed to maximize efficiency and avoid duplication.  Wurster, [*sic*] enjoyed a prior professional relationship with Nance and like the

client was located in Cincinnati.  Thus, for the most part, he handled direct contact with her.  Wurster did not even enter an appearance in this case or in the *Wise* case so as to avoid duplication.

52. I had the most federal litigation experience and, therefore, handled most of the "hard core" legal work. This included most of the research and the drafting of documents.  This also included preparation of the discovery materials.  This included researching and formulating the underlying theories in this case and our responses to the many legal arguments Defendants raised.  This also included most of the direct interaction with Gentry and the Court.

53. Rose, [*sic*] acted as liaison to Wurster and Nance. He played a mostly supportive role in terms of the litigation of the case, conferring with me in terms of strategies and tactics that should be employed, and acting as a second set of eyes as to the documents that were prepared.  His efforts greatly improved the final work product.  He also dealt with Gentry when I was not available.  Each attorney performed his own set of tasks and each attorney's efforts were invaluable toward reaching the end result.

(Affidavit of Theodore E. Meckler ("Meckler Aff.") at ¶¶ 51-53, Doc. No. 30-22.)  Rose describes the division of labor and each attorney's respective roles in nearly identical terms.  (Affidavit of Bruce R. Rose ("Rose Aff.") at ¶¶ 6-8, Doc. No. 30-25.)  Wurster contends that his role – which consisted mainly of communicating with Nance – was essential based on the circumstances of their client:

Commencing on or about December 19, 2012, I was engaged by Ms. Nance as her local counsel in Cincinnati in the matter of Nance v. Zwicker and Associates, PC to act as a liaison to work with Bruce Rose, Attorney at Law, since she had no relationship with Mr. Rose's law firm and trusted my judgment in the matter.  Although I did not enter an appearance in the litigation so as to minimize the amount of

-10-

> time spent by her attorneys,[1] I believe I have rendered a
> valuable service to her in helping her understand the
> various developments in the case and the settlement
> reached. . . . Ms. Nance is seventy-eight years of age and
> is receiving care in a nursing home.  Prior to entering the
> nursing home she had significant health issues limiting her
> mobility and ability to make appointments.  As a result of
> her poor health I was required to make appropriate
> accommodations for her trips to the office which took
> additional time. I have also been required to go to the
> nursing home to review documents with her.

(Affidavit of Walter C. Wurster ("Wurster Aff.") at ¶ 3, Doc. No. 30-27.)

Although Plaintiff's Counsel may have had the best interests of their client in mind when devising the structure of their work on this case, the record reveals that employing three attorneys to litigate this simple case actually resulted in duplicative and unnecessary work, particularly in relation to communication between the attorneys and Plaintiff.  Redundancy was an inherent feature of the way Plaintiff's Counsel approached their "division of labor" in this case.  For example, there are multiple time entries that reflect that Meckler billed for time spent talking to one of his co-counsel, and that his two co-counsel subsequently billed time for talking to one another and/or Plaintiff about the same issue.  For example, Meckler's time sheet indicates that, on March 26, 2013, he "[d]iscuss[ed] settlement proposal with co-counsel."  (Doc. No. 30-23.)  Rose's time sheet reflects two entries on that same date.  (Doc. No. 30-26.)  One

---

[1] Each of Plaintiff's Counsel points the fact that Wurster did not file an appearance in this matter as evidence that they structured their efforts to avoid duplicative billing.  Other than avoiding the very brief amount of time it would have likely required to draft and file a notice of appearance for Wurster, the undersigned cannot fathom how the fact that Wurster chose not to formally appear in this case reflects any effort by Plaintiff's Counsel to avoid redundant fees, particularly in light of the redundant nature of their billing otherwise.

-11-

reads, "[r]eview settlement proposal with TM." (*Id*.)  The other reads, "[r]eview settlement proposal with WW." (*Id*.)  Wurster's time sheet for that date reads, "Review e-mail and telephone with Bruce Rose; telephone with client." (Doc. No. 30-28.) Meckler's time sheet entry for September 25, 2013 reads, "[[r]eview CMC notice & Order, email co-counsel & docket time lines." (Doc. No. 30-23.)  Rose's time entry for that date reads, "[r]eview CMC order advised WW." (Doc. No. 30-26.)  Wurster's time entry for the next day reads, "[t]elephone conference with client concerning scheduling conference; and arrangements for availability in light of medical condition, and damages." (Doc. No. 30-28.)  These entries clearly reflect that, on each occasion, Meckler spoke with Rose, who spoke with Wurster, who then spoke with the client.  And all three attorneys billed time for those conversations.  The redundant billing created by this "division of labor" is inherently unreasonable.

Further, Plaintiff's Counsel also fail to explain why Plaintiff required three senior attorneys – billing at hourly rates of $275, $300, and $375 –  to litigate this fairly simple case.  The undersigned accepts the assertion that Plaintiff, an elderly woman in poor health, was most comfortable with Wurster because they had a prior relationship and, thus, agreed to the arrangement. That fact, however, does not render the arrangement described in the affidavits reasonable for the purpose of a fee award under the relevant statutes.  *See Pennsylvania v. Delaware Valley Citizens' Council*, 478 U.S. 546, 565 (1986) (Fee-shifting statutes "were not designed as a form of economic relief to improve the financial lot of attorneys, nor were they intended to replicate exactly the fee an attorney could earn through a private fee arrangement with his client.").  This is

-12-

particularly true in light of the fact that Plaintiff's Counsel do not explain acceptably why it was necessary that Rose serve as a "liaison" between Meckler and Wurster, or why Wurster did not merely introduce Meckler to Wurster and assure her that Meckler's representation would be sufficient. There is no evidence that the attorneys each made a "distinct contribution" to the case meriting an award of fees for all of the hours billed by each attorney. *Johnson v. Univ. College of Univ. of Ala. in Birmingham*, 706 F.2d 1205, 1208 (11th Cir. 1983) ("An award for time spent by two or more attorneys is proper as long as it reflects the distinct contribution of each lawyer to the case and is customary practice of multiple-lawyer litigation."). The time sheets are replete with entries reflecting that Rose reviewed documents prepared by Meckler before they were filed with the Court or sent to Gentry.  This is consistent with Plaintiff's Counsel's description of Rose's role as described in the relevant affidavits.  Those affidavits do not explain why such review was necessary.  Plaintiff's Counsel generally assert that Rose acted as "second set of eyes," and that his review  "greatly improved the final work product." (Meckler Aff. at ¶ 53.)  They do not however, explain in detail why Meckler, a senior attorney with the "most federal litigation experience," required such review in a fairly straightforward case, or how Rose's contributions "greatly improved" the work product. (*Id.* at ¶¶ 52, 53.)  Rose's time sheets reflect that, other than conferring with Meckler and then Wurster, and reviewing documents already drafted by Meckler, another of his functions was to review the bills sent by Wurster reflecting the amount of time Wurster had spent on case.  (Doc. No. 30-26, entries at 3/28/13, 2/26/14.)  In other words, Rose billed for the time he spent reviewing the time for which Wurster had billed.

-13-

As discussed above, this case did not involve complicated legal issues.  Two of Plaintiff's Counsel had experience with the issues, as they had litigated the same claims in *Wise*.  Plaintiff's Counsel's explanations for the redundancies in their method of litigating this matter are not sufficient to merit an award of fees for all hours worked by each attorney.  *See, e.g.*, Gratz v. Bollinger, 353 F. Supp. 2d 929, 942 (E.D. Mich. 2005) ("While there is nothing inherently unreasonable about making an award for time spent by two or more lawyers engaged in the same representation, counsel bears the burden of showing his or her specific contribution.") (internal quotation marks omitted).  Indeed, given the experience of counsel, particularly Meckler, and the relatively simple nature of the claims involved, the undersigned concludes that the hours expended on this matter by Rose and Wurster were not reasonable.[2]  **Accordingly, the hours expended by Rose and Wurster on this matter, a total of 28.1 hours, should be excluded from the fees in this case**.

Further, Meckler's time sheet contains entries totaling 3.5 hours during which Meckler communicated with his co-counsel in this case, either by e-mail or on the telephone.  These hours should be excluded from the fees in this case.  However, had Meckler prosecuted this case on his own, he would have spent some time communicating with his client.  Accordingly, the undersigned "credits" Meckler with the

---

[2] Similarly, Meckler expended 0.7 hours preparing and filing the motion to compel Defendants to produce unredacted versions of the relevant insurance agreements. (Doc. No. 30-23.)  This issue likely could have been handled more efficiently – and with less expense – through informal court processes, such as requesting a telephone conference to resolve the dispute.  Plaintiff's Counsel made no effort to avail themselves of this option.  Regardless, given the brief amount of time involved, the undersigned does not recommend excluding any time related to the motion to compel.

-14-

1.6 hours that Wurster spent communicating with Nance, **for a total of 1.9 additional hours that should be excluded from the fee award in this case**.

## B.     Hours Expended in *Wise*

Plaintiff's Counsel request fees for hours expended in attempting to add Nance as a plaintiff in *Wise*.  Specifically, Meckler's time sheet indicates that he expended 4.9 hours between January 14, 2013 and March 8, 2013 preparing and editing the motion to amend and the amended complaint in *Wise*.[3]  (Doc. No. 30-23.)  Defendant argues that Plaintiff's Counsel are not entitled to fees for work expended in another case.  The undersigned agrees.

In *O'Brien v. Ed Donnelly Enter., Inc.*, 575 F.3d 567 (6th Cir, 2009), counsel for plaintiffs requested fees for work in a related case.  The decision dealt with two Fair Labor Standards Act ("FLSA") cases, *O'Brien* and *Dellarussiani*.  The plaintiffs were originally members of an opt-in FLSA class in *O'Brien*.  After initially certifying the class and allowing discovery, the district court decertified the opt-in class and dismissed the plaintiffs' claims.  Thereafter, the plaintiffs filed separate complaints in *Dellarussiani*, which were ultimately resolved by way of an offer of judgment.  When plaintiffs' counsel moved for fees, they requested fees for work expended in the *O'Brien* case.  The district court declined to award fees for hours expended in a case other than *Dellarussiani*, reasoning that, because the plaintiffs had not prevailed in *O'Brien*, they

---

[3] The entry for January 14, 2013 reflects that Meckler spent 1.1 hours on the following: "email exchange with co-counsel about new client (Constance Nance), review materials from her, prep Motion for Leave to Amend & First Amended Complaint." (Doc. No. 30-23.)  The undersigned assumes that Meckler spent 0.6 hours on work related to the motion to amend and amended complaint in *Wise*.

were not entitled to fees for work expended in that case.

On appeal, the Sixth Circuit rejected "[s]uch a wooden reading" of the fee-shifting statute.  *O'Brien*, 575 F.3d at 576.  Rather, the pertinent analysis was whether the work expended in the *O'Brien* case benefitted the claims of the plaintiffs in *Dellarussiani*, the case in which they had prevailed:

> The reality is that discovery concerning the *Dellarussiani* plaintiffs' claims took place in *O'Brien*.  Expenses that plaintiffs' counsel incurred while trying to obtain collective-action certification in *O'Brien* should not be attributed to the prosecution of the *Dellarussiani* plaintiffs' particular claims *unless these expenses benefitted the Dellarussiani plaintiffs' individual claims*.  For instance, fees for depositions in *O'Brien* that uncovered the facts surrounding the *Dellarussiani* plaintiffs' claims, even if the depositions were conducted as part of the *O'Brien* plaintiffs' effort to obtain collective-action certification, should not be rejected on the basis of [the fee-shifting statute] of the FLSA.

*Id*. (emphasis added).

In this case, both sides agree that Plaintiff's Counsel are entitled to fees for work expended in *Wise* so long as that work benefitted Nance's claims in this case. Defendants contend that the work of Plaintiff's Counsel in *Wise* – the preparation of an unsuccessful motion to amend and proposed amended complaint – did not benefit Nance's claims in this case, and, thus, this Court should decline to award fees for that work.  The undersigned agrees.  There is no evidence that Plaintiff's Counsel's attempt to add Nance as a plaintiff in *Wise* benefitted her claims in this case.  Plaintiff's Counsel argue that their attempt to add Nance to the suit in *Wise* constituted "services . . . performed in pursuit of Nance's claims and benefitted those claims."  (Fee Motion at 13, Doc. No. 30.)  Plaintiff's Counsel, however, offer nothing to support this conclusory

contention.[4]  They do not explain how their efforts in *Wise* benefitted Nance in this case.  Although it may have been a prudent strategy to attempt to add Nance to an already existing litigation, the record offers no evidence that suggests that the attempt to do so actually benefitted Nance's claims *in this case*.  Unlike *O'Brien*, where the Sixth Circuit pointed to depositions conducted in the first case that may have uncovered facts that supported the plaintiffs' claims in the subsequent case, Plaintiff's Counsel point to nothing from *Wise* that assisted them in pursuing Nance's claims in this case.  Plaintiff's Counsel's work in *Wise* with respect to Nance's claims consisted entirely of drafting and reviewing a motion to amend and a first amended complaint.  They did not conduct any discovery or otherwise obtain information relevant to Nance's claims.  In sum, there is no evidence that the work expended in *Wise* benefitted Nance's claims in this case.[5]

**Accordingly, the hours expended by Meckler in drafting, reviewing and filing the motion to amend and the proposed amended complaint in *Wise*, a total of 4.9 hours, should be excluded from the fees in this case**.

_____

[4] Plaintiff's Counsel argue that, had Judge Lioi granted the motion to amend, "none of the legal work that followed would have been necessary."  (Fee Motion 13.) While potentially accurate, this argument is not relevant, as it does not address how their work in *Wise* benefitted Plaintiff's claims in this case.

[5] Most of the motion to amend and the amended complaint involve issues not relevant to this case, such as class action allegations and the effect of bankruptcy proceedings of the plaintiff in *Wise*.  The substantive allegations involving Nance track the language set forth in *Wise*'s original complaint and, therefore, should have involved *de minimis* work.  Meckler's time sheet reflects that he expended 0.3 hours drafting the complaint in this case, and the undersigned does not recommend excluding that time from the attorney's fees in this case.

## C.    Tolling and Venue Research

Judge Lioi denied the motion to amend in *Wise* in June 28, 2013.  (*See* Dkt. No.

12-CV-1653, Doc. No. 29.)  Plaintiff's Counsel filed the complaint in this case on July

24, 2013.  (Doc. No. 1.)  In between these two dates, Meckler expended 2.8 hours

researching the relevant statute of limitations, discussing with his co-counsel the

possibility of requesting a tolling agreement from Defendants, and then making that

request.  (Doc. No. 30-23.)  He also expended 5.8 hours researching the issue of

venue.  (*Id.*)  In his affidavit, Meckler explains Plaintiff's Counsel's decision to engage in

this research as follows:

> 17.    As a result of [Judge Lioi's denial of the motion to
> amend the complaint in *Wise*], we became concerned
> about preserving Nance's claims before the
> applicable statute of limitations expired.  We had to
> research and analyze the law as to the statute of
> limitations implications of Judge Lioi's decisions on
> Nance's claims.  This also lead us to research and
> analyze the law on tolling agreements and to try to
> locate model tolling agreements which might help us
> craft one on behalf of Nance.
>
> 18.    Our first attempt to preserve Nance's claims in this
> regard was to send a letter to Gentry dated July 9,
> 2013, inquiring whether Defendants would be willing
> to enter into a tolling agreement.  We informed Gentry
> that it would be more efficient for our client, his clients
> and the Court, to enter into a tolling agreement,
> instead of having Nance file a separate suit.  But we
> also made it clear that if Defendants were unwilling to
> enter into such an agreement, we would be forced to
> file a separate lawsuit.
>
> *    *    *
>
> 20.    After Defendants rejected our proposal to enter into a
> tolling agreement, we had to prepare to file a new

> lawsuit.  Since Nance resided in Cincinnati and Rose
> and I were in Cleveland, we also needed to research
> the venue implications of filing suit in Cleveland.  After
> conducting this research we concluded that we could
> file suit on her behalf in the Northern District of Ohio.
> We preferred to file in this Court because it was
> obviously more convenient for Rose and I and we
> believed it could be handled more efficiently that way.

(Meckler Aff. at ¶¶ 17-20.)

Defendants contend that the hours devoted to researching the issues of the relevant statute of limitations, the tolling agreement, and proper venue in this case were not reasonably expended.  The undersigned agrees.

The record reveals that the research and drafting conducted by Meckler with respect to these issues was intended to convenience himself and his co-counsel, rather than advance Nance's claims.  With respect to the statute of limitations and the tolling agreement, Plaintiff's Counsel point to nothing that prevented them from filing suit on Nance's behalf after Judge Lioi declined their motion to amend in *Wise*.  Meckler's time sheet reflects that, rather than immediately filing such a suit – even in light of their stated concern that the relevant period of limitations was in danger of expiring – he spent two weeks researching the issues of the statute of limitations and the potential tolling agreement.  Further, in his July 9, 2013 letter to Gentry, Meckler stated that it was his intention to seek to add Nance as a plaintiff in *Wise* a second time once Judge Lioi ruled on then-pending motions in that case.[6]  (Doc. No. 30-7.)  Meckler asked

---

[6] In her order denying the motion to amend with respect to Nance, Judge Lioi noted that she would reconsider Plaintiff's Counsel's request to add Nance as a plaintiff after she ruled on the Defendants' then-pending motion for judgment on the pleadings. (*See* Dkt. No. 12-CV-1653, Doc. No. 28 at 3.)

Gentry whether Defendants would be willing to enter into a tolling agreement because it would "more efficient for" Nance, the Defendants and the Court than filing a separate law suit.  (*Id*.)  Meckler's affidavit reiterates this claim, but does not explain it.  The import of his reasoning, however, is clear.  Plaintiff's Counsel did not want to file a separate suit on Nance's behalf.  Their intention was to avoid doing so and to merely add Nance as a Plaintiff to *Wise* when and if Judge Lioi would allow them to do so.  Their concern with the statute of limitations and the potential tolling agreement was not to advance Nance's claims, but, rather, to make it easier for the attorneys to resolve them.  **Accordingly, none of the research or other time expended on these issues was reasonably expended, and the hours associated with them – 2.8 hours – should be excluded from the fee award.**

The focus on counsels' convenience is even more apparent in the context of the venue issue.  There is no dispute that venue was appropriate where Nance resided, in the Southern District of Ohio.  Given her residence there, and the presence of her trusted attorney, Wurster, in Cincinnati, that court was the obvious choice.  Rather than file in that venue, however, Meckler expended 5.8 hours researching whether it was possible to file the suit in this Court.  And, as he stated in his affidavit, he did so for no reason other than the convenience of himself and Rose.

Plaintiff's Counsel contend that the decision to file in this Court – the result of Meckler's venue analysis – was a reasonable choice because it precluded the expense of "multiple visits to Cincinnati for Court appearances and the like."  (Reply at 5, Doc. No. 37.)  This argument lacks merit for two reasons.  First, one of Plaintiff's Counsel

has an office in Cincinnati, and easily could have appeared there with minimal expense.

Second, the docket reflects that none of Plaintiff's Counsel has ever personally

appeared in this Court in connection with this case.  The case management conference

and all other proceedings were conducted telephonically.  Accordingly, the decision to

file in this Court did not result in any savings related to travel.  There was no benefit to

Nance or to her claims in filing in this Court rather than the Southern District, and, thus,

Plaintiff's Counsel's research of the venue issue was not reasonable.[7]  **The hours**

**expended on this issue – 5.8 hours – should be excluded from the fee award.**

**D.      Economic Waste**

The Sixth Circuit has determined that an attorney in an FDCPA case is not

entitled to fees for nonproductive work:

> Waste is not in the public interest.  The Congress that
> passed the [FDCPA] in 1977 could hardly have wished to
> reward lawyers for doing nonproductive work and wasting
> their adversaries' time and the time of the courts as well.  In
> directing the court's to award "reasonable" fees, on the
> contrary, Congress undoubtedly wished to ensure that the
> lawyer representing a successful plaintiff would receive a
> reasonable for work reasonably found necessary – nothing

-----------------------

[7] In support of their request for fees for this research, Plaintiff's Counsel have
attached a copy of the internal memorandum prepared by Meckler.  (Doc. No. 37-1.)
This does not bolster their claim.  The memo, which Meckler spent 5.8 hours
researching and preparing, consists of black letter law and excerpts from various cases
and statutes.  (*Id.*)  It is bereft of any analysis relevant to the venue issue in this case
and states only principles that should be obvious to an experienced litigator.   Although
Plaintiff's Counsel contends that the analysis was more complicated than they
expected, that it is only because they were attempting to ascertain whether they could
file in this district rather than in the Southern District.  In other words, the question was
complicated only because they hoped to obtain a certain result. The memorandum
does not demonstrate how Nance's claims benefitted from Meckler's research of the
issue.

less, and nothing more.

*Lee v. Thomas & Thomas*, 109 F.3d 302, 306 (6th Cir. 1997).  In *Lee*, the plaintiff

brought suit alleging violations of the FDCPA and the OCSPA.  On March 3, 1994, the

defendant made an offer of judgment of $2,000.00, which was greater than the total

possible statutory damages of $1,200.00.  The plaintiff rejected this offer.  Thereafter,

the defendant made a subsequent offer of judgment for $1,200.00 plus the amount of

attorney's fees and costs determined by the court.  The plaintiff accepted this offer and

eventually sought an award of attorney's fees and costs totaling $12,759.00.  The

district court entered judgment granting the plaintiff $1,106.85 in fees and costs – a

figure that allowed nothing for the hours expended after March 3, 1994, the date of the

first offer of judgment.

On appeal, the Sixth Circuit affirmed.  The appellate court agreed with the

reasoning of the United States magistrate judge who first considered the plaintiff's fee

application, that the expenditure of time after the first offer of judgment "constituted

'economic waste.'" 109 F.3d at 305.  The Sixth Circuit observed:

> The statute authorizes nothing more than a fee determined
> by the court to be "reasonable," of course. If on March 3,
> 1994, the defendants were offering to confess judgment for
> everything to which [the plaintiff] could reasonably be
> considered entitled, including an attorney fee that appeared
> reasonable in light of the circumstances existing at the time,
> the magistrate judge evidently thought that it would be
> unreasonable for the lawyer to keep his meter running. We
> think so too. And if it was unreasonable for [the plaintiff's
> counsel] to continue performing legal services after March 3,
> any fee for services rendered after March 3 would clearly be
> unreasonable.

*Id*. at 305.  Here, Defendants argue that Plaintiff's Counsel are not entitled to any fees

-22-

for work performed after December 31, 2013, when Defendants made an offer of judgment of $4,000.00 and reasonable fees for work expended in this case. Defendants contend that any work performed after that date constitutes economic waste.

Plaintiff's Counsel does not dispute that $4,000.00  exceeds the amount of statutory damages to which Nance, barring evidence of actual damages, was entitled.[8] They argue, however, that the reasoning of *Lee* does not apply here because, although the December 31, 2013 Offer of Judgment was greater than Plaintiff's potential statutory damages, it did not fully account for the fees of Plaintiff's Counsel.  Their argument is based on their contention that they are entitled to fees incurred in *Wise.* Defendants' December 31, 2013 Offer of Judgment limited the attorney's fees and costs to those incurred in this case.  According to Plaintiff's Counsel, because they are entitled to fees incurred in *Wise*, the Offer of Judgment did not provide Plaintiff with everything to which she was entitled and, thus, their efforts beyond December 31, 2013 were not economic waste.

The undersigned disagrees.  As discussed above, Plaintiff's Counsel are not entitled to fees incurred in *Wise* because Plaintiff's Counsel failed to demonstrate that the work they performed in that case benefitted their client's claims in this case.  Even a cursory reading of *O'Brien*, the case on which both sides rely with respect to the issue,

---

[8] The FDCPA provides for statutory damages of $1,000.00.  15 U.S.C. § 1692k(a)(2)(A).  The OCSPA allows a consumer to recover $200.00.  Ohio Rev. Code § 1345.09(B).  Although both statutes permit recovery of actual damages, the record contains no evidence that Plaintiff suffered any actual damages as a result of the violations alleged in the complaint.

reveals that Plaintiff's Counsel would be entitled to fees incurred in *Wise* only to the extent that their work in *Wise* benefitted the claims in this case.  Plaintiff's Counsel point to nothing in the record to support their conclusory argument that their work in *Wise* benefitted Plaintiff's claims here.  Given the straightforward holding of *O'Brien* and the lack of evidence that their work in *Wise* benefitted the claims in this case, Plaintiff's Counsel's contention that they are entitled to fees for work incurred in *Wise* is frivolous. Accordingly, their reliance on that argument as a basis for rejecting the December 31, 2013 Offer of Judgment is not sufficient to merit fees for work incurred beyond that date.  As in *Lee*, because the December 31, 2013 Offer of Judgment included "everything to which [Nance] could reasonably be considered entitled," including attorney's fees for work incurred in this case, it was "unreasonable for [Plaintiff's Counsel] to continue performing legal services after" December 31, 2013.[9]  **The hours that Meckler incurred after December 31, 2013 – a total of 16.1 hours[10] – should be excluded from the fees in this case.**

**E.      Hours Expended on the Fee Motion**

Finally, Meckler's time sheets reflect that he spent 34.4 hours preparing the motion for fees and reply in support, as well as the accompanying materials.  (Doc.

---

[9] Further, Defendants' March 26, 2013 offer to settle this matter – for $1,500 and reasonable attorney's fees to that date – exceeded the entirety of relief to which Plaintiff was entitled.  At the time of that offer, Meckler had expended only 5.4 hours on the case.  Rather than accept this early settlement offer, however, Meckler opted to expend an additional 87.1 hours on this matter, at a cost of $32,662.50.

[10] This figure does not include the hours Meckler expended in requesting fees in this case.  The undersigned addresses those hours in a different section of this Report and Recommendation.

-24-

Nos. 30-23, 38-1.)  Plaintiff's Counsel include these hours in their fee request.  The

Sixth Circuit addressed the issue of fee-related litigation in *Coulter v. Tennessee*, 805

F.2d 146, 151 (6th Cir. 1986), where the court observed:

> Although time spent in preparing, presenting, and trying
> attorney fee applications is compensable; some guidelines
> and limitations must be placed on the size of these fees.
> Otherwise the prospect of large fees later on may
> discourage early settlement of cases by rewarding
> protracted litigation of both the civil rights case and the
> attorney fee case.
>
> The cases from this and other circuits uniformly hold that a
> lawyer should receive a fee for preparing and successfully
> litigating the attorney fee case after the original case is over,
> although in the private market place, lawyers do not usually
> charge, and clients do not usually pay, for the time it takes
> lawyers to calculate their fees.  The legislative intent behind
> attorney fee statutes, however, was to encourage lawyers to
> bring successful civil rights cases, not successful attorney
> fee cases. The attorney fee case is not the case Congress
> expressed its intent to encourage; and in order to be
> included, it must ride piggyback on the civil rights case.
>
> \*   \*   \*
>
> *In the absence of unusual circumstances, the hours allowed
> for preparing and litigating the attorney fee case should not
> exceed 3% of the hours in the main case when the issue is
> submitted on the papers without a trial and should not
> exceed 5% of the hours in the main case when a trial is
> necessary.* Such guidelines and limitations are necessary to
> insure that the compensation from the attorney fee case will
> not be out of proportion to the main case and encourage
> protracted litigation.

(citations omitted) (emphasis added); *see also Gonter v. Hunt Valve Co., Inc.*, 510 F.3d

610, 621 (6th Cir. 2007) ("The language from our *Coulter* decision controls the issue [of

fees incurred in litigating the fee motion] on appeal."); *Dobina v. Carruthers*, No. 5:09-

CV-2426, 2010 WL 1796345, *4 (N.D. Ohio May 3, 2010) (Lioi, J.) (applying the *Coulter* rule in an FDCPA case and reducing the plaintiff's request for fees related to the fee petition).

Here, given the deductions recommended by the undersigned, the hours reasonably expended on the merits in this case total 26.6 hours.  The total hours expended by Meckler in pursuit of fees in this matter, 34.4 hours, exceeds that amount and, therefore, is clearly more than the three percent permitted by *Coulter*.  Three percent of 26.6 hours is approximately .8 hours, which the undersigned rounds up to 1 hour.  **Accordingly, 34.4 hours should be excluded from the attorney's fees requested in this case.  Plaintiff is entitled to one hour for litigation related to the fee request.**

**G.     Costs**

Finally, Plaintiff requests $400, the cost of filing the complaint in this case, as costs.  Defendants do not challenge this request, and the undersigned concludes that it is reasonable.  *See* 28 U.S.C. § 1920(1) ("A judge or clerk of any court of the United States may tax as costs . . . [f]ees of the clerk and marshal.").

**H.     Calculation of Fees and Costs**

Plaintiff's Counsel submitted a request for fees totaling  $42,925.00, representing 120.6 hours of attorney work, in this case.  The undersigned recommends that the following hours be excluded from the award in this case: (a) 20.4 hours expended by Rose; (b) 7.7 expended by Wurster; (c) 1.9 hours that Meckler spent communicating with co-counsel; (d) 4.9 hours that Meckler expended in *Wise*; (e) 2.8 hours that

Meckler expended researching the statute of limitations and tolling; (f) 5.8 hours that Meckler expended researching venue; (g) 16.1 hours that Meckler expended following Defendant's December 31, 2013 Offer of Judgment; and (h) 34.4 hours that Meckler expended on the fee application.  Plaintiff's Counsel are entitled to 1 hour for work on the fee application.  These deductions and addition total 27.6 hours that were reasonably expended in this matter.

Because the undersigned recommended excluding the hours of any attorney other than Meckler, and because Defendants did not challenge Meckler's hourly rate, the undersigned multiples the reasonable hours by Meckler's hourly rate of $375.00, for a total of $10,350.00.

### IV. Conclusion

For the foregoing reasons, the Magistrate Judge recommends that the motion be GRANTED in part and DENIED in part, specifically, that Plaintiff be awarded attorney's fees in the amount of $10,350.00 and costs in the amount of $400.00

s/ *Nancy A. Vecchiarelli*
U.S. MAGISTRATE JUDGE

Date: September 29, 2014

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1).  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).**

_____

-27-